AO 91 (Rev. 12/10) Criminal Complaint

Case 3:14-cr-00406-D Document 1 Filed 09/24/14 Page 1 of 8 PageID 1

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

SEP 2 4 2014

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

UNITED STATES OF AMERICA

V.

MIGUEL MELACHOR (1)
MIGUEL VALLES (2)

**COMPLAINT**

CASE NUMBER: 3-14-MJ- 662 BK

I, the undersigned complainant being duly sworn state the following is true and correct

to the best of my knowledge and belief. On or about September 23, 2014, in the Dallas

Division of the Northern District of Texas, defendant(s) did,

> knowingly and intentionally combine, conspire and agree with each other and other
> known and unknown persons, to possess with the intent to distribute 500 grams or more
> of a mixture and substance containing a detectable amount of methamphetamine, a
> Schedule II controlled substance,

in violation of Title 21, United States Code, Section(s)  846, 841(a)(1) and (b)(1)(A) .

I further state that I am a(n) Special Agent with the Drug Enforcement Administration

(DEA) and that this complaint is based on the following facts:

> See attached Affidavit of Special Agent Travis Schulze, (DEA) which is incorporated
> and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    XX Yes    No

Signature of Complainant
TRAVIS SCHULZE
Special Agent, (DEA)

Sworn to before me and subscribed in my presence, on this 24th day of September, 2014, at
Dallas, Texas.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

AFFIDAVIT

I, Travis Schulze, after being duly sworn, depose and say as follows:

## I.  Introduction

My name is Travis Schulze, and I am a Special Agent with the United

States Department of Justice Drug Enforcement Administration (DEA).  I have

been so employed for approximately two years. I am assigned to the Dallas Field

Division Office to investigate violations of federal drug statutes.  I have

investigated and participated in previous investigations of violations of 21 U.S.C.

§§ 841(a)(1), and 846.

## II. Probable Cause

1.  I have probable cause to believe that **Miguel Melachor and Miguel Valles**

have violated 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A), that is, conspiracy to

possess with the intent to distribute 500 grams or more of a mixture and substance

containing a detectable amount of methamphetamine, a Schedule II controlled

substance.

2.  The following information is based on my own observations, information

received from other DEA agents, information received from a reliable and credible

Confidential Source (CS), information received from reliable and credible

Cooperating Defendants (CD), and information provided to me by other law

enforcement officers involved in the investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every fact known to me and other investigators. Rather, I am only submitting the facts necessary to establish probable cause that **Melachor and Valles** knowingly and intentionally conspired to possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

### Background

3.      On September 18, 2014, DEA agent Marcus West received a call from a reliable and credible confidential source (CS). The CS has worked for DEA for approximately one year and has provided information that has led to drug seizures and arrests of subjects. The CS said that he/she had received a call from a person named Miguel, later identified as Miguel Melachor. Melachor said that he was looking for a place to stash 17 kilograms of liquid methamphetamine. The initial phone call from Melachor to the CS was not recorded. The CS, after speaking to Agent West, called Melachor back and told Melachor that Melachor could store the methamphetamine with the CS. This phone call was not recorded.

4.      Melachor and an unknown Hispanic male then arrived at the CS's location in a white 2002, Ford F150 truck with license plates from Chihuahua, Mexico. According to the CS, while at the CS's location, Melachor and the

Affidavit - 2

Hispanic male siphoned the methamphetamine from a false compartment in the vehicle into gas cans. The false compartment was a tank located under the vehicle's back seat. Melachor and the Hispanic male left the gas cans containing the methamphetamine in a barn and told the CS that they would return in about one hour.

5.      After an hour passed and Melachor did not return, the CS began to call Melachor, but Melachor did not come back for the methamphetamine. The methamphetamine remained at the barn for four days until September 23, 2014, when Melachor called the CS.

6.      On September 23, 2014, Melachor called and told the CS that the methamphetamine cook had arrived in Dallas. Melachor then asked the CS to bring the methamphetamine to an unknown location. After a series of phone calls between Melachor and the CS, Melachor instructed the CS to bring the methamphetamine to Melachor's house in Dallas, Texas. Except for the initial phone call on September 23, 2014, the remaining phone calls and texts between the CS and Melachor were recorded.

7.      DEA agents then established surveillance at Melachor's home in Dallas, Texas. While agents were watching, the CS, wearing a recording device, approached the home with the methamphetamine. Melachor met the CS at the front

yard of the house and helped the CS carry in the gas cans that contained the liquid methamphetamine into the home.

     8.      While the CS was inside Melachor's home, the CS texted DEA agent West and informed agent West that Melachor's and another man there wanted the CS to take them to a store to buy propane gas to cook the methamphetamine. The other man was later identified as Miguel Valles. Agents followed the CS and Valles to a 7-11 gas station where they bought a propane gas tank. The CS identified Valles as the cook methamphetamine cook. After buying the propane gas, the CS and Valles returned to the Melachor's home. The CS dropped off Valles and the propane tank and left.

     9.      After leaving the home, the CS met with DEA agents and told agents that Melachor helped carry the gas cans containing the methamphetamine into the home. Inside, the CS observed Melachor and Valles pour the methamphetamine into large metal pots, one on the stove and another on a propane burner in the garage. The CS asked Melachor about being paid for helping Melachor with the methamphetamine. Melachor offered to pay the CS $500.00 and offered to sell the CS methamphetamine for $11,000.00 per kilogram once the methamphetamine was crystalized. The CS said that Melachor asked the CS to accompany Valles to the store to buy the propane gas. The CS also said that while he/she was in the home, he/she heard Valles discussing the process of converting liquid

Affidavit - 4

methamphetamine into crystalized form. Valles said that the process of crystalizing larger shards takes several days. The CS stated that Valles recently entered the United States from Mexico to cook the methamphetamine. The conversation that occurred inside the home among the CS, Melachor, and Valles was audio recorded.

11.     After talking to the CS, the agents decided to enter the home to secure the premises, to safeguard the community, and to protect the evidence in anticipation of obtaining a federal search warrant. The home is located near an elementary school. Agents also asked the fire department to be on standby due to the volatility of the chemicals used in the methamphetamine manufacturing process. Upon entering the home, the officers encountered an overwhelming chemical odor and pots on the stove under a lighted flame. The agents made a protective sweep, but did not seize any evidence. Melachor and Valles fled from the residence and agent apprehended them in the alleyway.

12.     After securing the residence, agents received a federal search for Melachor's home. A further search of the residence resulted in the seizure of approximately 10 gallons of methamphetamine liquid, drug packaging and equipment, a drug ledger, and cell phones.

13.     After his arrest, agents read Melachor his Miranda warnings and he agreed to answer questions. Melachor admitted to receiving the liquid

Affidavit - 5

methamphetamine from a white Ford truck the previous week. Melachor stated the liquid methamphetamine was siphoned from the truck into gas cans that were later transported to his residence that day. Melachor stated he received instructions from individuals in Mexico to pick up Valles at a bus station on the morning of September 23, 2014. Melachor said he waited for Valles for several days to arrive from Mexico so that Valles could begin crystalizing the liquid methamphetamine. Melachor said he did not know how to cook methamphetamine but agreed to assist in the process. After picking Valles up from the bus station, Melachor took Valles to a nearby Wal-Mart to purchase pots, ladles, and other supplies used in the methamphetamine manufacturing process. Melachor stated Valles immediately began cooking the methamphetamine after returning with the propane tank.

## CONCLUSION

Based upon the information contained in this affidavit, I believe that there is probable cause to believe that Miguel Melachor and Miguel Valles have violated 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A), that is, conspiracy to possess with the

Affidavit - 6

intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

Travis Schulze
DEA Special Agent

Sworn to before me on September 24, 2014

RENEE HARRIS TOLIVER
United States Magistrate Judge
Northern District of Texas

**Affidavit - 7**